CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

JUL 11 2008

JOHN F. CORCORAN, CLERK
BY: /s/ Bright
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| REGINALD R. BERRY, ) | |
| ) | |
| Plaintiff. ) | Civil Action No. 7:08CV00007 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| GENERAL ELECTRIC CORP., et al., ) | By: Hon. Glen E. Conrad |
| ) | United States District Judge |
| Defendants. ) | |

Reginald R. Berry, proceeding pro se, filed this civil action against his former employer, General Electric Corporation ("General Electric"), and three individual defendants, Frank Larizza, Steve Kuring, and Maureen Young. The case is presently before the court on the defendants' motions to dismiss. For the following reasons, the defendants' motions will be granted in part and denied in part.

## Background

The plaintiff worked for General Electric from 1994 to 2007.[1] The plaintiff alleges that he carried out his job duties as a test technician for twelve years with "no complaints to or from any manager," but that he began to experience problems in July of 2006, when a 23 year-old intern was assigned to his department as a management trainee. (Compl. at unnumbered p. 8). The plaintiff alleges that the intern constantly interrupted him with questions regarding his work, and that he was cited for insubordination and suspended when he complained about the "harassment." (Compl. at unnumbered p. 8). In July of 2007, a female intern was assigned to the

---

[1] General Electric asserts that the plaintiff was actually employed by a subsidiary corporation, GE Drives and Controls, Inc. The plaintiff disputes this assertion, however, and argues that he "d[id] indeed work for General Electric Corporation" and that "the Drives and Controls suffix only identifies the division of employment."

plaintiff's department. The plaintiff alleges that the same problems surfaced again, and that "being the only African American in this department," he "asked why [he] was . . . being singled out time and time again." (Compl. at unnumbered p. 8).

The plaintiff alleges that he received a call on his personal cell phone while he was at work on April 10, 2007, and that the female intern demanded that he discontinue using the phone in a demeaning and harassing manner. The plaintiff contends that the intern treated him differently, "walk[ing] past 5 to 6 other employees who were white, on their phones, [and] sitting around not working." (Compl. at unnumbered p. 9).

Following the incident, the plaintiff spoke with his union representative. The plaintiff alleges that the representative advised him that General Electric would take disciplinary action against him if he filed a grievance. The plaintiff alleges that he subsequently filed a grievance with General Electric on April 10, 2007, and that he was suspended the following day pending an investigation. On June 2, 2007, the plaintiff received a letter notifying him that he was terminated as of May 30, 2007.

The plaintiff filed this civil action on January 7, 2008, naming General Electric, Frank Larizza, Steve Kuring, and Maureen Young as defendants. The plaintiff identifies Larizza as the "Human Resources Manager" at General Electric's Salem facility, Maureen Young as "Counsel, Labor and Employment," and Steve Kuring as "Corporate Executive." (Compl. at unnumbered p. 2). The plaintiff alleges that Larizza terminated his employment based on false allegations, singled him out, and ignored the same actions of white employees. The plaintiff further alleges that Larizza accused him of violating a policy that does not exist and made numerous false statements about him. The plaintiff seeks five million dollars in damages for "defamation of

2

character, slander, . . . retaliation, reprisals, disparate treatment, race based discrimination, demeaning treatment, age discrimination, [and] Americans with Disabilities Title I and Title V." (Compl. at unnumbered p. 6).

On February 4, 2008, Larizza, Kuring, and Young moved to dismiss the plaintiff's complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted. That same day, General Electric filed a motion for partial dismissal under Rule 12(b)(6). The court subsequently issued a Roseboro[2] notice directing the plaintiff to file a response within fifteen days, and advising the parties that if documents outside the pleadings were submitted by either side, the motions to dismiss might be considered as motions for summary judgment. On February 19, 2008, the plaintiff moved for an extension of time in which to respond to the defendants' motions. The court granted the plaintiff's motion, and the plaintiff subsequently filed a response on March 19, 2008. The defendants' motions are now ripe for review.

**Discussion**

I.  Plaintiff's claims under the ADEA and the ADA

To the extent the plaintiff alleges that he was terminated and/or retaliated against in violation of the Age Discrimination in Employment Act ("ADEA") and the Americans with Disabilities Act ("ADA"), the defendants argue that such claims are subject to dismissal because they have not been administratively exhausted. To support this argument, the defendants rely on the plaintiff's charge of discrimination, which was submitted as an exhibit with General Electric's motion. The plaintiff does not dispute the authenticity of the charge. Because the

---

[2] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

3

court will consider this extrinsic document, the court will assess the defendants' motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure as motions for summary judgment. See Ford v. Advanced Mktg. Servs., 2000 U.S. App. LEXIS 372, at *3 (4th Cir. Jan. 20, 2000) (noting that a motion to dismiss should be treated as one for summary judgment if the court considers materials outside the pleadings, and that the district court "effectively convert[ed] the motion to dismiss to a motion for summary judgment" by comparing two EEOC charges of discrimination); Rohan v. Network Presentation LLC, 175 F. Supp. 2d 806, 809 (D. Md. 2001) (converting a motion to dismiss to a motion for summary judgment in an employment discrimination case, since the court was considering such extrinsic documents as the plaintiff's EEOC charge of discrimination). However, because the charge of discrimination relates solely to the issue of administrative exhaustion, the court will treat the defendants' Rule 12(b)(6) motions as motions for summary judgment only as to this issue. See Rohan, 175 F. Supp. 2d at 809.[3]

Before a plaintiff can bring an action under Title VII, the ADA, or the ADEA, the plaintiff must first exhaust his administrative remedies by filing an administrative charge with the Equal Employment Opportunity Commission. See Chacko v. Patuxent Inst., 429 F.3d 505, 506 (4th Cir. 2005) (Title VII); Downie v. Revco Disc. Drug Ctrs., Inc., 448 F. Supp. 2d 724, 728 (W.D. Va. 2006) (ADA); Flickinger v. E.I. du Pont de Nemours & Co., 466 F. Supp. 2d 701, 707

---

[3] The court notes that when a party has notice that a motion to dismiss will be treated as a motion for summary judgment based on the consideration of exhibits outside the pleadings, the court is not required to formally notify the party that the motion to dismiss will be treated as a motion for summary judgment. Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998). As previously stated, the Roseboro notice issued on February 6, 2008 advised the parties that if documents outside the pleadings were submitted by either side, any motion to dismiss under Rule 12(b)(6) may be considered as a motion for summary judgment. Based on this notice, the court finds that both sides were clearly on notice of the possibility that the court would consider the charge of discrimination and convert the defendants' motions to dismiss to motions for summary judgment.

4

(W.D. Va. 2006) (ADEA). The EEOC charge frames the scope of any future litigation. <u>Chacko v. Patuxent Inst.</u>, 429 F.3d 505, 506 (4th Cir. 2005) "Only those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent . . . lawsuit." <u>Evans v. Technologies Applications & Serv. Co.</u>, 80 F.3d 954, 963 (4th Cir. 1996) (discussing Title VII); <u>see</u> <u>also</u> <u>Dennis v. County of Fairfax</u>, 55 F.3d 151, 156 (4th Cir. 1995) (If "the claims raised . . . exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.") (discussing Title VII).

In this case, the plaintiff's EEOC charge alleged that General Electric suspended him on the basis of his race, and that the company retaliated against him for complaining about race discrimination. The plaintiff did not check the box on the charge form for discrimination on the basis of age or disability, and the narrative explaining his charge only referenced race discrimination and retaliation for complaining about race discrimination.[4] In short, the plaintiff's charge of discrimination did not remotely suggest that General Electric discriminated against him

---

[4] The facts alleged to support the charge are as follows:

I. I am a Test Technician and have been employed by the above-named employer since April 4, 1994. On or about July 13, 2006, I was suspended without pay and without being given a reason for the suspension. On April 10, 2007, I was told if I filed a grievance alleging discrimination, disciplinary action would be taken. I filed a grievance alleging that the company constantly overlooks White employees breaking company rules but enforces the same rule with respect to Black employees. On April 11, 2007, I was suspended.

II. Frank Larizza, Human Resources Director, said that he would get back to me regarding the reason for my April 11, 2007 suspension.

III. I believe that I was suspended because of my race, Black, in violation of Section 703 of Title VII of the Civil Rights Act of 1964, as amended. I also believe the April 11, 2007 suspension is in violation of Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended.

(Ex. 1 to General Electric's Mot.).

on the basis of his age or disability, and it does not otherwise allege facts that would have put General Electric or the EEOC on notice that he was charging General Electric with unlawful discrimination or retaliation under the ADA or the ADEA. Moreover, given the fact that the charge alleged only race discrimination and retaliation for complaining about race discrimination, a reasonable investigation would not have focused on age or disability discrimination, or retaliatory conduct prohibited by the ADA or the ADEA. Accordingly, the court agrees with the defendants that the plaintiff's claims for unlawful discrimination and retaliation under the ADA and the ADEA exceed the scope of the plaintiff's EEOC charge and, thus, that they must be dismissed for failure to exhaust administrative remedies. See Miles v. Dell, Inc., 429 F.3d 480, 492 (4th Cir. 2005) (holding that the plaintiff's retaliation claim was not reasonably related to her EEOC charge, where the plaintiff did not check the retaliation box on her charge form, and the narrative explaining her charge mentioned only sex and pregnancy discrimination); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 133 (4th Cir. 2002) (holding that the plaintiff's claims for retaliation, color discrimination, and sex discrimination were barred, where the plaintiff's EEOC charge only alleged that the defendant discriminated against him on the basis of his race, and thus, "[a]dministrative investigation of retaliation, and color and sex discrimination, . . . could not reasonably be expected to occur").

    II.    <u>Plaintiff's Title VII Claims Against the Individual Defendants</u>

Although it is undisputed that the plaintiff exhausted his administrative remedies with respect to his claims for unlawful discrimination and retaliation under Title VII, such claims must be dismissed to the extent that they are asserted against Larizza, Kuring, and Young. As these individual defendants explain in their motion to dismiss, it is well established that employees,

6

including supervisors, are not liable in their individual capacities under Title VII.[5] See Lissau v. Southern Food Serv., 159 F.3d 177, 181 (4th Cir. 1998) (holding that supervisors cannot be held liable in their individual capacities under Title VII because they do not fall within the definition of an employer). Accordingly, the plaintiff's Title VII claims against the individual defendants must be dismissed.

### III. Plaintiff's Defamation Claim

In addition to his claims under federal law, the plaintiff asserts a claim for defamation.[6] Under Virginia law, the elements of a claim for defamation are "(1) publication of (2) an actionable statement with (3) the requisite intent." Chapin v. Knight-Ridder, Inc., 993 F.2d 1087, 1092 (4th Cir. 1993). For a statement to be actionable, it must be both false and defamatory. Id. A statement is defamatory per se if it prejudices a person in his profession or trade, Union of Needletrades, Indus. & Textile Employees v. Jones, 603 S.E.2d 920, 924 (Va. 2004), or imputes an unfitness to perform the duties of a job or a lack of integrity in the performance of the duties, Yeagle v. Collegiate Times, 497 S.E.2d 136, 138 (Va. 1998).

In this case, the plaintiff alleges that Frank Larizza "made numerous false allegations" about him, that Larizza "accused [him] of violating a policy that doesn't exist," and that Larizza

---

[5] The court notes that the ADA and the ADEA also limit liability to employers. See Birkbeck v. Marvel Lighting Corp., 30 F.3d 507 (4th Cir. 1994) (holding that the ADEA limits civil liability to employers, and that an individual defendant, as a supervisor, was not a proper defendant); Baird v. Rose, 192 F.3d 462, 472 (4th Cir. 1999) (applying the Title VII definition of "employer" and holding that "the ADA does not permit an action against individual defendants for retaliation for conduct protected by the ADA"). Consequently, even if the plaintiff had exhausted his administrative remedies with respect to his claims under the ADA and the ADEA, such claims could not proceed against the individual defendants.

[6] In his prayer for relief, the plaintiff seeks damages for defamation and slander. The court notes that, "[u]nlike other jurisdictions, Virginia makes no distinction between slander (spoken words) and libel (written words) in actions for common law defamation." Eslami v. Global One Communs., Inc., 48 Va. Cir. 17, 21 (Va. Cir. Ct. 1999) (citing Fleming v. Moore, 275 S.E.2d 632 (Va. 1981)).

"singled [him] out and ignored the same actions of white employees." (Compl. at unnumbered p. 6). Additionally, in his response to the defendants' motions to dismiss, the plaintiff alleges that biased, defamatory, and prejudicial material was "illegally submitted without cause or warrant or consent, into the personnel file of the plaintiff therefore substantiating the act of defamation by G.E. et. als., Frank Larizza."[7] (Pl.'s Resp. at p. 2). Based on these allegations, the court concludes that the plaintiff has alleged sufficient facts to state a claim for defamation against General Electric and Larizza. Accordingly, the defendants' motions to dismiss will be denied to the extent that the defendants argue that the plaintiff's complaint fails to state a claim for defamation against these defendants.[8]

## Conclusion

For the reasons stated, the motions to dismiss filed by the defendants will be granted in part and denied in part, and defendants Kuring and Young will be dismissed from the case.

---

[7] To the extent the plaintiff's response contains additional factual allegations to support his defamation claim, the court construes the response as a motion to amend the complaint and grants the motion. See Gordon v. Leake, 574 F.2d 1147, 1151-1152 (4th Cir. 1978) (pro se submissions must be liberally construed).

[8] The court recognizes that a qualified privilege exists with respect to "statements made between co-employees and employers in the course of employee disciplinary or discharge matters." Larimore v. Blaylock, 528 S.E.2d 119, 121 (Va. 2000). However, this affirmative defense was not raised by the defendants and the court declines to consider it at this time. See Goodman v. PraxAir, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (explaining that the merits of an affirmative defense may be reached by a Rule 12(b)(6) motion only "in the relatively rare circumstances" when "all facts necessary to the affirmative defense clearly appear[] on the face of the complaint") (internal quotation marks and citations omitted).

8

The Clerk is directed to send certified copies of this memorandum opinion to the plaintiff and counsel of record for the defendants.

**ENTER:** This 11th day of July, 2008.

/s/ Glen Conrad
United States District Judge