

CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

DEC 3 0 2008

JOHN F. CORCORAN, CLERK
BY: _____ DEPUTY CLERK

REGINALD R. BERRY,     )

         )

    Plaintiff.      )     Civil Action No. 7:08CV00007

         )

v.         )     **MEMORANDUM OPINION**

         )

GENERAL ELECTRIC CORP., et al.,     )     By: Hon. Glen E. Conrad

         )     United States District Judge

    Defendants.     )

In this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), Reginald R.

Berry, an African-American employee of General Electric Corporation ("General Electric"),

seeks recovery for discriminatory discharge, retaliation, and defamation. The case is presently

before the court on the motion for summary judgment filed by General Electric and Frank

Larizza. For the reasons that follow, the court will grant the motion for summary judgment.

### Factual Background

The following facts are presented in the light most favorable to Berry. See Anderson v.

Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (noting that "all evidence must be construed in the

light most favorable to the party opposing summary judgment").

Berry began working as a test technician at General Electric's Salem, Virginia facility in

April of 1994. His work record was generally unremarkable until July of 2006, when Berry was

suspended for three and a half days. The suspension was imposed following an incident with a

supervisor, Alex Olea, during which Berry allegedly used profanity and refused to perform a task

that required immediate attention. Although Berry contends that the incident arose when Olea

asked him to operate unsafe, uninspected machinery, Frank Larizza, the production human

resources manager, ultimately determined that Berry engaged in insubordinate and improper conduct. As a result of the incident, a letter of reprimand was placed in Berry's personnel file for one year. The letter stated that "[i]f this behavior should continue, further action may be taken to include termination." (Larizza Aff., Ex. 1).

On April 10, 2007, Berry had an altercation with another supervisor, Bonnie Brooks, after Brooks observed Berry using his cell phone in the testing area. Brooks immediately reported the incident to Larizza. Brooks advised Larizza that she had asked Berry to save the phone conversation until lunchtime, since she wanted him to finish a particular project before the end of his shift, and that Berry refused to end his phone conversation, used profanity, and yelled that she was targeting him because of his race.

Around the same time, Berry spoke with his union steward. Berry advised the union steward that he wanted to file a grievance against Brooks for treating him differently than white employees who were using their cell phones. Berry alleges that the union steward warned him that he might be terminated if he filed a grievance, but that he nonetheless chose to file one.

Berry was subsequently suspended without pay while Larizza investigated the incident. Although Berry told Larizza that he immediately ended his cell phone conversation and that nothing happened between him and Brooks, Larizza ultimately found Brooks' report to be credible. Based on the similarity between this incident and that which reportedly occurred between Berry and Olea, Larizza decided to terminate Berry effective May 30, 2007. According to Larizza, "[i]t was standard practice at the plant to terminate employees who violate 'last chance' warnings within one year of the warning, absent extenuating circumstances, and

2

[Larizza] did not perceive that plaintiff's conduct was justified or excused in any way." (Larizza Aff. at para. 10).

On May 29, 2007, the union filed a grievance regarding Berry's termination. The plant manager reviewed the grievance and determined that the decision to terminate Berry was based on legitimate business factors, including the fact that Berry had been cited for two similar incidents of improper conduct in less than one year, and the fact that Berry had allegedly acted in an intimidating manner with supervisors.

An arbitration hearing was held on March 13, 2008. On May 16, 2008, the arbitrator issued a written opinion, in which he ultimately sustained the charge of insubordination, finding that Brooks gave Berry a clear and unambiguous directive to end his cell phone conversation, and that Berry failed to follow Brooks' directive. However, based on Berry's long work record with General Electric, the arbitrator modified the penalty of termination to a time-served suspension and final warning. Berry was subsequently reinstated without back pay in accordance with the arbitrator's decision.

### **Procedural History**

Berry filed this civil action on January 10, 2008, before he was reinstated to his position. In his complaint, Berry alleged that General Electric and three individual defendants, Larizza, Steve Kuring, and Maureen Young, engaged in discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and the American with Disabilities Act ("ADA").[1] Berry also asserted a claim for defamation against Larizza and General Electric.

---

[1] Berry identified Young as "Counsel, Labor and Employment," and Kuring as "Corporate Executive." (Compl. at unnumbered pg. 2).

3

On February 4, 2008, Larizza, Kuring, and Young moved to dismiss Berry's complaint, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief may be granted. That same day, General Electric filed a motion for partial dismissal under Rule 12(b)(6). The defendants' motions were ultimately granted in part, leaving only Berry's Title VII claims against General Electric and Berry's claim for defamation.[2]

The case is presently before the court on the motion for summary judgment filed by General Electric and Larizza. The court held a hearing on the motion on November 10, 2008. The motion is now ripe for review.

## **Standard of Review**

An award of summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a party's evidence to raise a genuine issue of material fact to avoid summary judgment, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson, 477 U.S. at 248. In determining whether to grant a motion for summary judgment, the court must view the record in the light most favorable to the non-moving party. Terry's Floor Fashions, Inc. v. Burlington Indus., Inc., 763 F.2d 604, 610 (4th Cir. 1985).

A party seeking summary judgment bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met that burden, however, the burden shifts to the nonmoving party to show

---

[2] The court held that Berry's claims for discrimination and retaliation under the ADA and the ADEA were subject to dismissal for failure to exhaust administrative remedies. The court also dismissed the plaintiff's claims for discrimination and retaliation under Title VII, to the extent that they were asserted against the individual defendants.

4

that such an issue does, in fact, exist. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). The nonmoving party must set forth more than a "mere . . . scintilla of evidence" to forestall summary judgment. Anderson, 477 U.S. at 252. Thus, "unsupported speculation . . . is not sufficient to defeat a summary judgment motion." Ash v. United Parcel Service, Inc., 800 F.2d 409, 411-412 (4th Cir. 1986).

## Discussion

I.   **Title VII Claims**

Berry claims that he was terminated because of his race, following the incident with Bonnie Brooks in April of 2007, and because he filed a grievance complaining about race discrimination. Title VII makes it unlawful "to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits discrimination against any employee who "has opposed any . . . unlawful employment practice" under Title VII. 42 U.S.C. § 2000e-3(a). The court will address each of Berry's Title VII claims in turn.

A.   **Discriminatory Discharge**

A plaintiff may defeat a motion for summary judgment and establish a claim for intentional discrimination through either the mixed-motive or pretext method of proof. Hill v. Lockheed Martin Logistics Mgmt., Inc., 354 F.3d 277, 284 (4th Cir. 2004). Using the mixed-motive method, a plaintiff can establish a claim for discrimination by showing that discrimination was a motivating factor in the employer's employment decision. Id. The plaintiff may use either direct or circumstantial evidence, and need not show that discrimination was the sole motivating factor. Id.

5

Alternatively, a plaintiff can use the pretext method to establish a claim for discrimination. Under the pretext framework, which was first established in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973), the plaintiff must initially establish a prima face case of discrimination. If the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. <u>Hill</u>, 354 F.3d at 285. Once the defendant articulates a permissible reason, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's proffered reason was not its true reason, but a pretext for discrimination. <u>Id.</u>

In this case, the parties have confined their arguments to the pretext framework. Under this framework, Berry must initially establish a prima facie case of discrimination. In order to make out a prima facie case of race discrimination in the enforcement of employee discipline measures, Berry must show (1) that he is a member of a protected class; (2) that he was qualified for his job and his job performance was satisfactory; (3) that he was fired; and (4) that other employees who were not members of the protected class were retained under similar circumstances. <u>Bryant v. Bell Atl. Md., Inc.</u>, 288 F.3d 124, 133 (4th Cir. 2002).

Here, the parties do not contest the first and third factors in this analysis. Instead, the parties' dispute centers on the second factor -- whether Berry's performance was satisfactory at the time of his termination -- and the fourth factor -- whether white employees were retained under similar circumstances. Having reviewed the record, the court concludes that Berry has failed to raise a genuine issue of material fact with respect to the fourth factor, and thus, that he is unable to make out a prima facie case of discrimination.

6

During discovery, Berry identified several white employees who he claimed received more favorable treatment due to their race. However, Berry has failed to demonstrate that any of those employees were treated differently than him "under similar circumstances." Id. Simply stated, there is no evidence that any of the employees identified by Berry violated a "last chance" warning within one year after the warning was imposed, and were nonetheless retained. See Id. at 134 (holding that the plaintiff failed to demonstrate that the defendant treated him any differently than members outside the plaintiff's class, since none of the employees cited by the plaintiff "were engaged in the same type of misconduct" attributed to the plaintiff). To the contrary, the record reveals that Mike Durham, one of the employees identified by Berry, was, in fact, terminated when he committed an infraction within one year after having received a warning for similar misconduct.

Moreover, even if Berry could establish a prima facie case of discrimination, General Electric has articulated a legitimate, nondiscriminatory reason for Berry's termination. According to Larizza's affidavit, Larizza found Brooks' report of the incident with Berry to be credible, and "[b]ased on the similarity of this behavior to that which led to the 'last chance' warning less than a year earlier, [Larizza] decided to terminate [Berry]." (Larizza Aff. at para. 9). Because General Electric has clearly met its burden of proffering a permissible reason for Berry's termination, Berry is required to show that the asserted reason is pretext for discrimination. Hill, 354 F.3d at 285.

In an attempt to establish pretext, Berry relies on letters from co-workers and his union steward. Although the letters document the fact that these individuals believe that Berry is a good employee and that he did not act in an insubordinate manner toward Brooks, "[i]t is the

7

perception of the decision maker which is relevant to the question of [discrimination], not the opinions of [Berry's] co-workers or other third parties." <u>Tinsley v. First Union Nat'l Bank</u>, 155 F.3d 435, 444 (4th Cir. 1998). Thus, while Berry and his co-workers may think that Larizza's decision was incorrect or unfair, the court "do[es] not sit to appraise [Larizza's] appraisal." <u>Hawkins v. PepsiCo, Inc.</u>, 203 F.3d 274, 280 (4th Cir. 2000). Instead, the court's "'sole concern is whether the reason for which the defendant discharged the plaintiff was discriminatory.'" <u>Id.</u> (quoting <u>DeJarnette v. Corning Inc.</u>, 133 F.3d 293, 299 (4th Cir. 1998)). Because none of the letters proffered by Berry address whether Larizza honestly believed that Berry had acted in an insubordinate manner, the letters are not sufficient to demonstrate pretext. <u>See Holland v. Wash. Homes, Inc.</u>, 487 F.3d 208, 217 (4th Cir. 2007) (noting that, "[i]n assessing pretext, a court's focus must be on the perception of the decision maker, that is, whether the employer believed its stated reason to be credible") (internal citation and quotation marks omitted).

Berry also attempts to establish pretext on the basis of other incidents at General Electric. For instance, Berry alleges that General Electric bypassed minority employees for positions that came available in September of 2001 and June of 2002. Additionally, Berry alleges that "a minority employee at G.E. had racial slurs made to him by Sam Atkins" in June of 2003, and that in September of 2008, a "hangman's noose" was observed on display in a supervisor's office. (Nov. 17, 2008 Resp. to Mot. for Summ. J. at unnumbered pg. 3). Berry's allegations in this regard, however, are also insufficient to create a triable issue as to pretext, since Berry fails to show how any of these incidents are relevant to his own termination. <u>See Brinkley v. Harbour Recreation Club</u>, 180 F.3d 598, 608 (4th Cir. 1999) ("To prove discriminatory animus, the

8

derogatory remark cannot be stray or isolated and unless the remarks upon which plaintiff relies were related to the employment decision in question, they cannot be evidence of discrimination.") (internal citation and quotation marks omitted)); see also Ford v. GE Lighting, LLC, 2004 U.S. Dist. LEXIS 10570, at *11 (W.D. Va. Feb. 6, 2004) (holding that the plaintiff's references to "past racial slurs, two anonymous complaint letters, and an EEOC consent decree" were insufficient to rebut the defendant's legitimate, nondiscriminatory reason for the plaintiff's termination, since the plaintiff failed to show how any of the past incidents were relevant to the actions that the defendant took against him).

In short, Berry has failed to forecast sufficient evidence to show that General Electric's articulated reason for his termination is a pretext for discrimination. Accordingly, the court will grant the defendants' motion for summary judgment with respect to Berry's discriminatory discharge claim.

B. **Retaliatory Discharge**

Berry next contends that he was fired in retaliation for complaining about discrimination. The McDonnell Douglas pretext framework is also applicable to claims of retaliation under Title VII. See Karpel v. Inova Health Sys. Servs., 134 F.3d 1222, 1228 (4th Cir. 1998).

Even assuming that Berry can establish a prima facie case of retaliation,[3] General Electric is nonetheless entitled to summary judgment, since Berry has failed to present sufficient factual support for the proposition that General Electric's proffered reason for his termination is pretext for retaliation. While Berry emphasizes that his union steward warned him that he might be

---

[3] To establish a prima facie case of retaliation, Berry must show (1) that he engaged in a protected activity; (2) that General Electric acted adversely to him; and (3) that the protected activity was causally connected to the adverse action. Holland, 487 F.3d at 218.

terminated if he filed a grievance, such speculation on the part of the union steward is clearly

insufficient to establish pretext. Middlebrooks v. Univ. of Md. at College Park, 980 F. Supp.

824, 831 (D. Md. 1997) ("Speculation and belief are insufficient to create a fact issue as to

pretext . . . .") (internal citation and quotation marks omitted). Berry's only other evidence in this

regard is the fact that, at the time he was fired, General Electric was aware that he had filed a

grievance complaining about discrimination. The United States Court of Appeals for the Fourth

Circuit has made clear, however, that "mere knowledge on the part of an employer that an

employee it is about to fire has filed a discrimination charge is not sufficient evidence of

retaliation to counter substantial evidence of legitimate reasons for discharging that employee."

Williams v. Cerberonics, Inc., 871 F.2d 452, 457 (4th Cir. 1989). Indeed, "to find otherwise

would essentially be to hold that an employer can take no action against an employee who has

engaged in protected activity -- even when [the employee's] performance merits an adverse

employment action." Jenkins v. City of Charlotte, 2007 U.S. Dist. LEXIS 29553, at *37 (W.D.

N.C. Apr. 20, 2007).

Based on the foregoing, the court concludes that Berry has failed to set forth sufficient

evidence of pretext to create a triable issue of fact. Accordingly, the court will grant the motion

for summary judgment with respect to Berry's retaliatory discharge claim.[4]

---

[4] Although Berry does not address whether his claims for race discrimination and retaliation can
be proven under the mixed-motive framework, the court finds that Berry has not presented sufficient
evidence, direct or circumstantial, "for a reasonable jury to conclude, by a preponderance of the
evidence, that [race or retaliation] was a motivating factor for any employment practice." Desert Palace,
Inc. v. Costa, 539 U.S. 90, 101 (2003).

II.    **Defamation Claim**

In addition to his claims under Title VII, Berry asserted a claim for defamation against Frank Larizza and GE. Although Berry filed written responses to the defendants' arguments with respect to his claims under Title VII, Berry did not mention the defamation claim in his response briefs. Thus, it appears that Berry does not oppose the motion for summary judgment as to the defamation claim.

In any event, the court concludes that the defendants are entitled to summary judgment with respect to this claim. During discovery, Berry was asked to identify the statements on which his defamation claim was based. In response, Berry identified several statements that Larizza allegedly made during the course of the union grievance proceedings. For instance, Berry testified that Larizza referred to Berry's grievance as a "slam dunk," and that Larizza told a union representative that "[Berry will] never be back out here working." Berry also testified that, when discussing the fact that he had been charged with malicious wounding in 2004, Larizza told a union representative that Berry "just went out and shot some guy." (Berry Dep. 128-130).

Virginia law, which governs Berry's defamation claim, applies a qualified privilege to allegedly defamatory statements made in the context of an employment matter. Union of Needletrades, Indus. & Textile Employees v. Jones, 603 S.E.2d 920, 924 (Va. 2004). Such statements are protected because they are "made between persons on a subject in which the persons have an interest or duty." Larimore v. Blaylock, 528 S.E.2d 119, 121 (Va. 2000). To overcome the qualified privilege in the employment context, the plaintiff must establish, by clear and convincing evidence, that the statements were "'inspired by malice.'" Conley v. Town of Elkton, 190 Fed. Appx. 246, 254 (4th Cir. 2007) (quoting Larimore, 528 S.E.2d at 121).

11

"Specifically, the plaintiff must establish common-law malice -- i.e., 'behavior actuated by motives of personal spite, or ill-will, independent of the occasion on which the communication was made.'" Id. (quoting Union of Needletrades, 603 S.E.2d at 924).

In this case, there is no evidence that Larizza acted out of personal spite or ill-will in making the statements that Berry identified during discovery. Consequently, the court concludes that the statements at issue are subject to a qualified privilege, and thus, that the defendants are entitled to summary judgment with respect to Berry's defamation claim.

### Conclusion

For the reasons stated, the court will grant the motion for summary judgment filed by the defendants. The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to all counsel of record.

ENTER: This 30th day of December, 2008.

_____
United States District Judge

12